## SHIVE et al. v. KEYSTONE STANDARD WATCH Co.[1]

*(Circuit Court, E. D. Pennsylvania.   February 7, 1890.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—WATCH REGULATORS.
     The invention of letters patent No. 284,079, for improvement in watch regulators consisting of an arm pivoted to the bridge in combination with an index pivoted to this arm, capable of an independent movement, and a screw and spring adapted to set the regulator more exactly after a rough setting by hand, where the screw and spring were placed on the arm bearing against the index, is infringed by a device similar in all respects except that the screw and spring were placed on the bridge bearing against the arm.
2. SAME—ISSUE OF LETTERS—SPECIFICATIONS—SUFFICIENCY.
     Where the method of attachment of the regulator to the bridge is not shown or described, but where the rim must necessarily be cut so as to be "snapped" over the projection of the bridge, and where such attachments are commonly, if not uniformly, made in this manner, the specification would be intelligible to an ordinary workman, and sufficient.

Hearing on Bill, Answer, and Proofs.

Bill in equity by David Shive and Benjamin F. Du Bois against the Keystone Standard Watch Company for infringement of patent.

*De Forrest Ballou,* for complainant.

*John McDonald,* for respondent.

BUTLER, J.   The respondent is charged with infringing complainant's patent for "improvement in watch regulators," No. 284,079, dated August 28, 1883.   The validity of the patent is not attacked.   The charge of infringement alone is denied.   It is only necessary, therefore, to ascertain what the patent covers, and what the respondent has done.   The specifications say:

"My invention consists of the index of the regulator, connected to a pivotal arm, and capable of motion independent of said arm, whereby provision is made for delicate or fine adjustment or regulation of a watch.   Referring to the drawing, A represents the bridge of a watch, which is generally of the well-known form and construction, and B represents the regulating arm, which is pivoted to said bridge, and formed with a pivoted neck, to which is connected the index, C; it being noticed that the said index has a motion independent of the arm, B.   From the end of the arm arises lugs, D, D, between which the index is fitted; and passing through one of the lugs is a set-screw, E, the point of which is adapted to press against the index.   F represents a spring which is secured to the arm, B, and bears against the index on the side opposite the screw, E, so that, while the index may be moved in one direction by the screw, its return or opposite motion may be effected by the spring when the screw is released."

---

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

The claims are:

"*First,* an arm pivoted to the bridge, in combination with an index pivoted to said arm, and having a motion independent thereof, substantially as and for the purpose set forth. *Second,* an index in combination with the screw and spring, and a pivoted arm on which said index has independent motion, substantially as and for the purpose set forth; *third,* the arm with lugs, D, D, the index, C, the screw, E, and the spring, F, combined and operating as and for the purpose set forth."

The respondent has manufactured and sold a watch regulator, substantially identical with that above described and claimed. It consists of the arm, with an index pivoted thereon, having independent motion, and the screw and spring to secure accurate adjustment. The screw and spring are so arranged as to operate against the arm, and thus adjust the regulator; while in the complainant's they operate directly against the index. This difference, however, is immaterial as respects the question before me. Possibly it constitutes an improvement. The complainant's arm, while movable, must be tightly adjusted on the bridge to avoid danger of moving it, in operating the screw. The application of the screw and spring to the arm seems to avoid this danger. If it be an improvement, however, it is nothing more, and does not entitle the respondent to the complainant's invention.

The criticism by respondent's experts of the specifications and drawings, respecting the attachment of complainant's regulator to the bridge, and the effort thus made to distinguish it from the respondent's, accomplishes nothing. No competent watchmaker would fail to understand the specifications and drawings, and see how the attachment is to be made. The rim must necessarily be cut, as illustrated by the model in proof, so as to allow it snapped over the projection of the bridge. Such attachments are commonly, if not uniformly, so made. In this instance it could not readily be made in any other way without defeating the object of the invention. When thus made, the attachment is substantially identical with the respondent's. At most, the difference ference is one of mechanical construction merely.

The proofs indicate, pretty plainly, that Mr. Bitner, from whom the respondent obtained its regulator, saw and copied the complainant's (with the immaterial changes referred to) before it was patented. He denies this, and his denial may possibly be true. He is, however, so deeply involved in the controversy, which threatens his character as well as his pecuniary interests, that his denial is entitled to less weight than it would otherwise receive. The correspondence between the complainant and the Lancaster Watch Company, (the respondent's predecessor in business,) of which Mr. Bitner was general manager, shows that this company was offered the invention when first made; that the offer was taken into consideration; and that a little later Mr. Bitner applied for and obtained a patent for the regulator complained of. How it occurred that the complainant's application, then pending, was overlooked by the office, is difficult of explanation. That it was overlooked must be assumed; for, as above found, the two patents cover the same invention. The only

substantial difference in the specifications consists in the use of different terms to describe the same thing. The bill must be sustained, and a decree entered accordingly.